STANFORD E. PURSER (13440)
Utah Solicitor General
J. CLIFFORD PETERSEN (8315)
Assistant Utah Solicitor General
JONI J. JONES (7562)
DARIN B. GOFF (11355)
HEATHER J. CHESTNUT (6934)
Assistant Utah Attorneys General
SEAN D. REYES (7969)
Utah Attorney General
Office of the Utah Attorney General
160 E. 300 S., 6th floor
Salt Lake City, Utah 84111
(801) 366-0100
spurser@agutah.gov
cliffpetersen@agutah.gov
dgoff@agutah.gov
hchestnut@agutah.gov

*Counsel for State of Utah, Department of Corrections and Department of Human Services*

AMANDA MONTAGUE (9941)
DANNY BOKOVOY (12446)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
160 E. 300 S., 6th floor
Salt Lake City, Utah 84111
(801) 366-0100
amontague@agutah.gov
danielbokovoy@agutah.gov

*Counsel for Department of Corrections*

STEPHANIE SAPERSTEIN (5541)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
160 E. 300 S., 6th floor
Salt Lake City, Utah 84111
(801) 366-0100
stephanisaperstein@agutah.gov

*Counsel for Department of Human Services*

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff(s),<br><br>v.<br><br>THE STATE OF UTAH, THE UTAH DEPARTMENT OF CORRECTIONS, and THE UTAH DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Defendants. | **DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:24-cv-00241<br><br>Judge Honorable Jill N. Parrish<br><br>Magistrate Judge Jared C. Bennett |

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................................ iii

MEMORANDUM OF LAW ..........................................................................................................1

INTRODUCTION ..........................................................................................................................1

STATEMENT OF FACTS .............................................................................................................2

LEGAL STANDARD .....................................................................................................................4

LEGAL ARGUMENT ....................................................................................................................4

    I.    The ADA's plain text precludes including gender dysphoria as a disability ........................5

    II.   Context confirms gender dysphoria is not a disability under the ADA .............................12

Conclusion ....................................................................................................................................14

## TABLE OF AUTHORITIES

Page(s)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 8
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 8
*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081 (10th Cir. 2017) ......... 7
*Clark v. Rameker*, 573 U.S. 122 (2014) ................................................................................ 10
*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992) .............................................................. 9
*Doe v. Northrop Grumman Sys. Corp.*, 418 F. Supp. 3d 921 (N.D. Ala. 2019) ................... 14
*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008) .......... 8, 14
*Duncan v. Jack Henry Assocs., Inc.*, 617 F.Supp.3d 1011, 1056-57 (W.D. Mo. 2022) 14, 16
*Edmo v. Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019) ........................................................... 13
*First Nat'l Bank of Durango v. Woods (In re Woods)*, 743 F.3d 689 (10th Cir. 2014) ...... 16
*Fuller v. Norton*, 86 F.3d 1016 (10th Cir.1996) .................................................................... 18
*Hall v. Fla.*, 572 U.S. 701 (U.S.Fla., 2014) ........................................................................... 11
*Hamilton v. Lanning*, 560 U.S. 505 (2010) ........................................................................... 10
*Hardeman v. Smith*, 764 F. App'x 658 (10th Cir. 2019) ....................................................... 5
*In re Mallo*, 774 F.3d 1313 (10th Cir. 2014) ......................................................................... 11
*Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011) ......................... 8, 14
*Kincaid v. Williams*, 143 S. Ct. 2414 (2023) ............................................................ 11, 16, 17
*Kosilek v. Spencer*, 774 F.3d 63 (1st Cir. 2014) ................................................................... 13
*Lamb v. Norwood*, 899 F.3d 1159 (10th Cir. 2018) ............................................................... 6
*Lamie v. U.S., Tr.*, 540 U.S. 526 (2004) .................................................................................. 9
*Lange v. Houston Cnty., Georgia*, 608 F. Supp. 3d 1340 (M.D. Ga. 2022) ...................... 14
*Leocal v. Ashcroft*, 543 U.S. 1 (2004) ................................................................................... 17
*Michaels v. Akal Sec., Inc.*, No. 09-CV-01300-ZLW-CBS, 2010 WL 2573988 (D. Colo. June 24, 2010) ........ 15
*New Prime Inc. v. Oliveria*, 586 U.S. 105 (2019) ................................................................. 10
*Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998) ............................................................... 15
*Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744 (S.D. Ohio 2018) ......................... 14
*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) ..................................................................... 9
*Scanlon White, Inc., v C.I.R.*, 472 F.3d 1173 (10th Cir. 2006) ............................................ 12
*Sylvia v. Wisler*, 875 F.3d 1307 (10th Cir. 2017) ................................................................... 8
*Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012) ................................................... 11
*United States v. Villa*, 589 F.3d 1334 (10th Cir. 2009) ....................................................... 16
*Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022) ........................................... 6, 7, 8, 11,13

Statutes

42 U.S.C. § 12102(1)(A) ........................................................................................................... 9
42 U.S.C. § 12102(4)(A) ......................................................................................................... 16
42 U.S.C. § 12132 ...................................................................................................................... 9
42 U.S.C. § 12211(1) ......................................................................................................... 12, 13

42 U.S.C. § 12211(b)(1) ................................................................................................. 9, 16, 17
Pub. L. 101-336, § 511 ............................................................................................................ 10

Rules

Federal Rule of Civil Procedure 12(b)(6) ................................................................... 5, 8, 9

**MOTION**

State Defendants move the Court to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). The complaint alleges violations of the Americans with Disability Act (ADA). But gender dysphoria is not a disability under the ADA. For this reason, more fully discussed in the accompanying memorandum, State Defendants request that the Court grant the motion to dismiss the complaint.

**MEMORANDUM OF LAW**

**INTRODUCTION**

Plaintiff United States of America asserts a single claim: State Defendants violated the Americans with Disability Act by discriminating against the Complainant based on her[1] gender dysphoria. But gender dysphoria is not a disability under the ADA. The Act expressly excludes "gender identity disorders not resulting from physical impairments" as disabilities. And in 1990, when the ADA was enacted with this exclusion, the term "gender identity disorders" included gender dysphoria as that condition is currently described by the U.S. So the complaint must be dismissed for failure to state a claim upon which relief may be granted.

Dismissing the U.S.'s claim would not demean or discount Complainant's situation. The State Defendants are doing everything they reasonably can to properly

---

[1] Complainant identifies as a transgender female so State Defendants use female pronouns. *Hardeman v. Smith*, 764 F. App'x 658, 659 n.1 (10th Cir. 2019) (unpublished).

1

treat and accommodate Complainant within the context of all the penological interests at stake. (Plaintiff's complaint ignores the extent of State Defendants' efforts to date, the complexity of the overall situation—including facts that cannot be discussed in this motion, and the State Defendants' ongoing efforts to reasonably address the U.S.'s and Complainant's concerns.)[2]

And, more broadly, dismissing the suit would not say anything derogatory about gender dysphoria generally. Dismissal would simply reflect the Court's duty under separation-of-powers principles to interpret and apply the ADA as Congress wrote it. The bigger policy question of whether gender dysphoria should be covered by the ADA gets left to the legislative branch. As it should be. Only they have the constitutional authority to amend the ADA the way the federal executive branch's complaint urges. The complaint provides a quintessential example of the executive trying to get the judiciary to make law in the face of legislative inaction. The Court should decline that invite and dismiss the suit.

## STATEMENT OF FACTS[3]

Complainant is a transgender women incarcerated in the Utah State Prison. Compl. ¶ 13. She has gender dysphoria, a diagnostic category in the most recent version

---

[2] Complainant has not brought her own suit, including ADA or Eighth Amendment claims. *See, e.g., Lamb v. Norwood,* 899 F.3d 1159, 1163 (10th Cir. 2018) (affirming summary judgment against transgender inmate's Eighth Amendment claim where she had received hormone therapy and counseling).

[3] For purposes of this motion, Plaintiff's well-pleaded factual allegations are taken as true. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,* 861 F.3d 1081, 1105 (10th Cir. 2017).

of the Diagnostic and Statistical Manual of Mental Disorders (DSM). Compl. ¶ 9 (citing DSM-V-TR).

Based on the DSM-V-TR, Plaintiff describes gender dysphoria as "clinically significant distress or impairment in social, occupational, or other important areas of functioning resulting from the incongruence between gender identity and assigned sex." Compl. ¶ 10 (internal quotation marks omitted). This condition "causes" Complainant "significant psychological distress that substantially affects her emotional regulation and her ability to care for herself and interact with others." Compl. ¶ 16.

After Complainant entered custody, prison medical records noted that she has "gender identity disorder issues." Compl. ¶ 25. Complainant requested treatment for gender dysphoria, including hormone treatment, and modifications to various prison policies to accommodate her condition. Compl. ¶¶ 26-37. The prison, Plaintiff alleges, delayed needed treatment and denied virtually all the accommodation requests. Compl. ¶¶ 38-40. This alleged discrimination caused Complainant harm, including worsening gender dysphoria. Compl. ¶¶ 40-42.

The United States eventually sued the Utah Department of Corrections and the Utah Department of Health and Human Services, which had taken over health care services for inmates as of July 1, 2023. Compl. ¶ 1 & n.1. The complaint asserts the legal conclusion—which does not have to be taken as true—that gender dysphoria is a disability under the ADA. Compl. ¶ 15. And based on that alleged legal hook, the complaint asserts only one cause of action: UDOC violated the ADA "by discriminating [against Complainant] based on a disability." Compl. ¶ 44.

3

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In determining whether a plaintiff has met this standard, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Sylvia v. Wisler*, 875 F.3d 1307, 1313 (10th Cir. 2017) (internal quotation marks omitted). But only well-pleaded facts—"that is, plausible, non-conclusory, and non-speculative" facts—need be taken as true. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). A complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). And mere conclusions "will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

## LEGAL ARGUMENT

The complaint's lone claim—an ADA violation—must be dismissed for failure to state a claim upon which relief can be granted. That's because the ADA does not cover the only alleged disability—gender dysphoria. The statute's plain text and context compel that conclusion.

4

I.       **The ADA's plain text precludes including gender dysphoria as a disability**

Plaintiff alleges State Defendants violated the ADA by excluding or discriminating against Complainant's participation in or benefit from prison programs or services "by reason of [her] disability." 42 U.S.C. § 12132; Compl. ¶ 44. The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). And if that's all the ADA said about what disability means, Plaintiff's allegations about Complainant's gender dysphoria would likely pass rule 12(b)(6)'s requirements. *See* Compl. ¶¶ 9-16. But the Act goes on to say that "the term 'disability' shall not include . . . *gender identity disorders* not resulting from physical impairments." 42 U.S.C. § 12211(b)(1) (emphasis added). So the question becomes whether "gender identity disorders" includes gender dysphoria.

Statutory interpretation always starts with the text at issue. *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."). The ADA does not define "gender identity disorders," so the Court must give the term its "ordinary" meaning. *Clark v. Rameker*, 573 U.S. 122, 127 (2014); *Hamilton v. Lanning*, 560 U.S. 505, 513 (2010). And to guard against changing meanings over time, statutory terms must be given their ordinary meaning as understood "at the time Congress enacted the statute." *New Prime Inc. v. Oliveria*, 586 U.S. 105, 113 (2019) (internal quotation marks omitted). Otherwise, judges would be free to essentially amend older statutes with new meanings outside the legislative process the constitution requires. *New Prime*, 586

5

U.S. at 113. And public reliance interests in a statute's settled meaning would be at risk every time a court interpreted the statute. *Id.*

The Tenth Circuit has not determined whether gender dysphoria is excluded from the ADA. Only one circuit court—the Fourth Circuit—has addressed the issue. *See Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022). Though the two-judge majority of that panel concluded gender dysphoria is not excluded under the ADA, the dissenting judge's opinion is better reasoned because it persuasively determines and applies the ordinary meaning of "gender identity disorders." *See id.* at 783-86 (Quattlebaum, J., concurring in part and dissenting in part). This Court should also adopt the ordinary meaning of the ADA's text.

Congress enacted the ADA, including the "gender identity disorders" exclusion, in 1990. Pub. L. 101-336, § 511 (July 26, 1990), 104 Stat. 327. At that time, the term's ordinary meaning included what society now calls gender dysphoria. From at least 1990 to well into this century, "gender identity disorder has been understood to include distress and discomfort from identifying as a gender different from the gender assigned at birth." *Williams*, 45 F.4th at 783 (Quattlebaum, J., dissenting) (citing numerous sources, including dictionaries and medical publications).

Gender dysphoria falls squarely under the 1990 ordinary meaning of "gender identity disorders not resulting from physical impairment" and is thus expressly excluded from the ADA's coverage. *Id.* at 780-90; *see also Kincaid v. Williams*, 143 S. Ct. 2414, 2414-19 (2023) (Alito, J., dissenting from denial of certiorari) (critiquing Fourth Circuit's reasoning). The public would understand "disorder" to mean, in relevant part,

6

"a disturbance in physical or mental health," *Random House Webster's College Dictionary* (1990) or "an abnormal physical or mental condition," https://www.merriam-webster.com/dictionary/disorder#synonyms. So a gender identity disorder would include any mental health disturbance or abnormal mental condition involving gender identity. *See, e.g., In re Mallo,* 774 F.3d 1313, 1321 (10th Cir. 2014) (stating "[d]ictionary definitions are useful touchstones to determine the 'ordinary meaning' of an undefined statutory term" (citing *Taniguchi v. Kan Pac. Saipan, Ltd.,* 566 U.S. 560, 566 (2012))). That ordinary public meaning would certainly include Plaintiff's description of gender dysphoria as significant distress resulting from the incongruence between gender identity and assigned sex, Compl. ¶ 10, and Complainant's alleged symptoms of "physical or mental impairment" that causes her "significant psychological distress." *Id.* ¶¶ 15-16.

Turning to medical-field definitions from the DSM leads to the same conclusion. *Hall v. Fla.,* 572 U.S. 701 (U.S.Fla., 2014) (describing the DSM as "one of the basic texts used by psychiatrists and other experts"). The DSM in 1990 explained that "'[t]he essential feature of [gender identity] disorders . . . is an incongruence between assigned sex (i.e., the sex that is recorded on the birth certificate) and gender identity.'" *Williams,* 45 F.4th at 782 (dissent) (quoting DSM-III-R at 71). And "even in mild cases, gender identity disorders involve 'discomfort and a sense of the inappropriateness about the assigned sex.'" *Williams,* 45 F.4th at 783 (dissent) (quoting DSM-III-R at 71). As noted, the DSM-III-R "was no outlier on this issue"—various other medical publications define gender identity disorder the same way. *Williams,* 45 F.4th at 783 (dissent) (citing

7

sources). Indeed, gender identity disorder and gender dysphoria "are often cross-referenced or referred to as synonyms." *Id.* at 783 n.4. Thus, the ADA's "exclusion of gender identity disorders, as that phrase was understood at the time, included an alleged disability involving discomfort or distress caused by a discrepancy between one's gender identity and the sex assigned at birth." *Id.* at 784. This squarely describes the allegations in the complaint—that Complainant "is a transgender woman" with "gender dysphoria" that causes her "significant psychological distress that substantially affects her emotional regulation and her ability to care for herself and interact with others." Compl. ¶¶ 13, 14, 16.

Though the complaint includes the current definition of gender dysphoria from the DSM-V-TR, that definition is irrelevant to the ordinary meaning analysis. The meaning of the exclusions in 42 U.S.C. § 12211(1) was fixed at the time the provision was enacted in 1990, long before the DSM-V-TR was published. Subsequent meanings to the extent they differ are irrelevant. Interpretation of the term "disability" under the ADA is a question of law—not a question of fact. *See Scanlon White, Inc., v C.I.R.*, 472 F.3d 1173, 1175 (10th Cir. 2006) (stating that "interpretation of a federal statute is a question of law"). So despite the DSM's shifting use of terminology over time, this Court's legal analysis focuses on the meaning of the ADA's exclusionary language when it was passed in 1990.

Only in the last few years has the term gender identity disorder been replaced with the term gender dysphoria. The First Circuit noted in 2014 that "the term 'gender identity disorder' ha[d] recently been replaced with the term 'gender dysphoria' in the

8

medical community. *Kosilek v. Spencer*, 774 F.3d 63, 68 n.1 (1st Cir. 2014). Similarly, the Ninth Circuit noted in 2019 that, "[u]ntil recently, the medical community commonly referred to gender dysphoria as 'gender identity disorder.'" *Edmo v. Corizon, Inc.*, 935 F.3d 757, 768 n.4 (9th Cir. 2019). And the American Psychiatric Association's 2013 statement accompanying the release of the DSM's fifth edition states that it "replace[d] the diagnostic name 'gender identity disorder' with 'gender dysphoria.'" Am. Psychiatric Ass'n: DSM-5 Development, Gender Dysphoria (2013), *available at* https://www. psychiatry.org/File%20Library/ Psychiatrists/ Practice/DSM/APA_DSM-5-Gender-Dysphoria.pdf (last visited Jun 10, 2024).

So the inquiry is whether the Complainant's condition is a gender identity disorder as understood in 1990, not whether her condition meets the new definition of gender dysphoria. Given the plain meaning of 42 U.S.C. § 12211(1), the answer is yes.

The inquiry then looks further—under the plain language of the ADA's exclusions—to whether the gender identity disorder "result[ed] from physical impairments." 42 U.S.C. § 12211(1). The answer is no. The issue is not whether a gender identity disorder in the abstract might possibly be the result of a physical impairment, but whether the complaint plausibly alleges that the Complainant's gender identity disorder is the result of a physical impairment. None of the factual allegations in the complaint plausibly allege this. Significantly, the complaint contains no causal facts alleging that the Complainant's gender identity disorder results from a physical impairment. It fails to offer "specific factual allegations" to support such an inference.

9

*Kansas Penn*, 656 F.3d at 1214; *see also Dudnikov,* 514 F.3d at 1070 (conclusory and speculative allegations need not be taken as true).

This Court therefore should conclude that Complainant's condition is excluded from the ADA because it is a gender identity disorder not resulting from physical impairments, as other district courts have done. *See Duncan,* 617 F.Supp.3d at 1056 (concluding the "plain language indicates Congress intended to exclude from ADA-covered disabilities gender identity disorders not resulting from physical impairment as a general category"); *Lange v. Houston Cnty., Georgia,* 608 F. Supp. 3d 1340, 1362-63 (M.D. Ga. 2022) (holding that gender dysphoria not resulting from physical impairment is excluded from the ADA); *Doe v. Northrop Grumman Sys. Corp.*, 418 F. Supp. 3d 921, 930 (N.D. Ala. 2019) (holding that "a condition of 'gender dysphoria' (formerly described as a 'gender identity disorder') that does not result from a physical impairment is expressly excluded from the definition of disabilities covered by the [ADA]"); *Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 755 (S.D. Ohio 2018) ("Nowhere in the Amended Complaint did [Plaintiff] allege that her gender dysphoria was caused by a physical impairment or that gender dysphoria always results from a physical impairment."); *see also Michaels v. Akal Sec., Inc.*, No. 09-CV-01300-ZLW-CBS, 2010 WL 2573988, at *6 (D. Colo. June 24, 2010) (holding that "[g]ender dysphoria, as a gender identity disorder, is specifically exempted as a disability by the Rehabilitation Act").

Also, Congress's use of the plural gender identity *disorders* in the exclusions further supports the conclusion that Complainant's condition is excluded from the ADA. Even if gender dysphoria were a newly invented diagnosis, and not merely the renaming

of gender identity disorder, it still comes under the scope of "gender identity disorders" as used in the ADA. "Congress commonly formulate[s] categories . . . without knowing all the items that may fit—or may later, once invented, come to fit—within those categories." Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 100 (2012); see also *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998).

Judge Quattlebaum likewise emphasized that the "plural use of the term [disorders] should not be overlooked." *Williams*, 45 F.4th at 784. This language shows "Congress considered this class to include more than one diagnosis," which is consistent with the DSM-III-R's specification of multiple gender identity disorders. *Id.* (citing DSM-III-R at 71–78). But the DSM-III-R "also contains a category of 'Gender Identity Disorder Not Otherwise Specified.'" *Williams*, 45 F.4th at 784 (citing DSM-III-R at 77–78). So "whether gender dysphoria is new diagnosis or a replacement for gender identity disorder is not the point." *Id.* The point remains that section "12211(b)(1)'s exclusion of gender identity disorders, as that phrase was understood at the time, included an alleged disability involving discomfort or distress caused by a discrepancy between one's gender identity and the sex assigned at birth." *Williams*, 45 F.4th at 784.

In the alternative, this Court can also conclude that Complainant's condition falls within the catchall phrase "other sexual behavior disorders," and is therefore excluded from the ADA. This "catchall category suggests that Congress sought to prohibit the ADA's application to conditions that are sufficiently similar to the more specific categories of conditions that precede." *Kincaid*, 143 S. Ct. at 2417 (Alito, J., dissenting from denial of certiorari).

State Defendants recognize that Congress wants "disability" construed broadly, but that guidance is expressly limited to "the extent permitted by the" ADA's terms. 42 U.S.C. § 12102(4)(A). And those terms exclude "gender identity disorders," which includes gender dysphoria, from disability status under the ADA. Congress tellingly has never amended those exclusions. *See Duncan v. Jack Henry Assocs., Inc.*, 617 F.Supp.3d 1011, 1056-57 (W.D. Mo. 2022) ("Congress could, of course, amend § 12211(b)(1) or the ADA more broadly to specifically encompass gender identity disorders like gender dysphoria. It has not yet chosen to do so, however.")

## II.     Context confirms gender dysphoria is not a disability under the ADA

Beyond the ordinary meaning of the text itself, the context within which Congress placed "gender identity disorders" further confirms that the term includes gender dysphoria. *First Nat'l Bank of Durango v. Woods (In re Woods)*, 743 F.3d 689, 694 (10th Cir. 2014) (stating "the meaning of statutory language, plain or not, depends on context" (internal quotation marks omitted)); *United States v. Villa*, 589 F.3d 1334, 1343 (10th Cir. 2009) (noting that to give the language of a statute its "most natural reading," courts "consider not only the bare meaning of the [text] but also its placement and purpose in the statutory scheme" (citations omitted)).

In relevant part, the ADA forbids disability status for "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders." 42 U.S.C. § 12211(b)(1). This "broad brush used by Congress" bars disability status "not only to 'transsexualism' and 'gender identity disorders not resulting from physical impairments,'

12

but also to 'other sexual behavior disorders.'" *Kincaid,* 143 S. Ct. at 2417 (Alito, J., dissenting from denial of certiorari) (quoting 42 U.S.C. § 12211(b)(1) (emphasis removed)). Combining all these related terms in the same provision serves to reinforce the plain language reading: Congress prohibited "the ADA's application to conditions that are sufficiently similar to the more specific categories of conditions that precede." *Id.*

Indeed, it's incomprehensible that Congress would exclude as disabilities conditions like "transvestism, transsexualism, . . . gender identity disorders"—plural, not singular—and any "other sexual behavior disorders" but not gender dysphoria. That kind of implied hair splitting between related conditions would make no sense.

Likewise, calling "gender identity disorders" an obsolete diagnosis does not negate context or somehow turn gender dysphoria into an ADA disability. *See, e.g., Williams,* 45 F.4th at 769. Regardless of whether medical books still use the phrase, it remains in the statute and must be given meaning. Otherwise, the term gets read out of the ADA contrary to the statutory interpretation canon requiring that each term have meaning. *Leocal v. Ashcroft,* 543 U.S. 1, 12 (2004) ("[W]e must give effect to every word of a statute wherever possible."); *Fuller v. Norton,* 86 F.3d 1016, 1024 (10th Cir.1996) ("We avoid interpreting statutes in a manner that makes any part superfluous.").

In short, context supports the conclusion that "gender identity disorders" includes gender dysphoria.

## Conclusion

For the foregoing reasons, gender dysphoria is not a protected disability under the ADA. Plaintiff's complaint must be dismissed for failure to state a claim upon which relief may be granted.

Respectfully submitted this 12th day of June, 2024.

OFFICE OF THE UTAH
ATTORNEY GENERAL

/s/  Stanford S. Purser
Stanford S. Purser
Utah Solicitor General
J. Clifford Petersen
Assistant Utah Solicitor General
Darin Goff
Heather Chestnut
Assistant Utah Attorneys General
*Counsel for State of Utah,
Department of Corrections and
Department of Human Services*

Amanda Montague
Danny Bokovoy
Assistant Utah Attorneys General
*Counsel for Department of Corrections*

Stephanie Saperstein
Assistant Utah Attorney General
*Counsel Department of Human Services*

## CERTIFICATE OF SERVICE

I certify that on this 12th day of June, 2024, I electronically filed the foregoing, **DEFENDANTS' MOTION TO DISMISS**, using the Court's electronic filing system. Service provided via Notice of Electronic Filing (NEF) through ECF system:

Alyse Bass
Alyse.Bass@usdoj.gov

Jane E. Anderson
Jane.andersen2@usdoj.gov

Amanda A. Berndt
Amanda.berndt@usdoj.gov

/s/Dustie Ross